IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
NORTHERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| | ) |
| vs. | ) Criminal Action No. 2:19-00151-KD-N-1 |
| | ) |
| BERNARD A. DAVISON, | ) |
| | ) |
| Defendant. | ) |

**ORDER**

This action is before the Court on Defendant Bernard A. Davison's *pro se* Motion for Compassionate Release pursuant to 18 U.S.C. § 3582(c)(1)(A)(i) and letters in support. (Docs. 42, 43, 45, 46).[1] Upon consideration, and for the reasons set forth herein, Defendant Davison's motion is **DISMISSED without prejudice.**

**I.    Background**

In June 2019, Davison was charged in a four count indictment for: distribution and possession with intent to distribute marijuana (Count One); illegal possession of a firearm (Count Two); possession of a firearm not registered in the National Firearms Registration and Transfer Record (Count Three); and possession of a firearm in furtherance of a drug trafficking crime (Count Four). (Doc. 1). Davison pled guilty to Count Four. (Docs. 18, 21). His criminal history category was a I and his sentencing guideline range was 120 months to life. (Doc. 39 (SEALED)). In October 2020, Davison was sentenced to serve 48 months as to Count 4, said term to run concurrent with any yet to be imposed state custody sentence, followed by 5 years of supervised release. (Doc. 40).

---

[1] To the extent that Davison's motion could be construed as a motion for release to home confinement under the Coronavirus Aid, Relief, and Economic Security Act ("CARES Act"), Pub. L. No.116-136, § 12003(b)(2), 134 Stat. 281, 516 (to be codified at 18 U.S.C. § 3621), the motion is **DENIED**. See (Doc. 43 at 2 ("I wanted to ask if I could finish my sentence on home confinement?")). The CARES Act does not give the federal courts authority to direct the Bureau of Prisons to allow a prisoner to serve their sentence on home confinement.

Davison is 22 years old. He has served a little over one year of his sentence; his release date is April 22, 2023. He is incarcerated at FCI Coleman Low. As of April 26, 2021, no inmates or staff were positive for COVID-19, 250 inmates and 42 staff had recovered from COVID-19. One inmate and one staff reportedly died from COVID-19. *COVID-19 Cases*, https://www.bop.gov/coronavirus/ (last updated April 26, 2021).

### II.     Procedural requirements

Before Section 603(b) of the First Step Act of 2018 was enacted, the district court could grant a motion for sentence reduction under 18 U.S.C. § 3582(c)(1)(A), the compassionate release provision, only if the Director of the Bureau of Prisons filed the motion. Now, in relevant part, the statute, as amended by the First Step Act of 2018, provides that:

> the court . . . upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment…

18 U.S.C. § 3582(c)(1)(A)(i); First Step Act of 2018, Pub. L. 115-391, § 603(b), 132 Stat. 5194, 5239.

In United States v. Harris, 989 F.3d 908 (11th Cir. 2021), the Eleventh Circuit explained that the "exhaustion requirement of § 3582(c)(1)(A) is a claim-processing rule." 989 F.3d at 911. "Claim-processing rules require 'that the parties take certain procedural steps at certain specified times.'[and] [t]hey 'may be 'mandatory' in the sense that a court must enforce the rule if a party properly raises it,' but they are not jurisdictional." Id. (citing Fort Bend Cnty. v. Davis, 139 S.Ct. 1843, 1849-50 (2019)) (internal citations omitted). Accord United States v. Lee, 2021 WL 1292754, at *2 (11th Cir. April 7, 2021).

Here, Davison does not allege that he filed a request with the Bureau of Prisons or that he complied with the 30-day requirement. See e.g., United States v. Gosha, 2021 WL 857283, at *1

2

(N.D. Ala. March 8, 2021) (finding same for defendant who provided no proof that he requested compassionate release from his warden). And "[d]espite the unique circumstances presented by the COVID-19 pandemic…defendants are generally required to comply with the exhaustion requirement in § 3582(c)(1)(A)." United States v. Rodrigues, 2021 WL 613825, at *2 (11th Cir. Feb. 17, 2021). Accordingly, Davison is not entitled to compassionate release at this juncture; his motion is **DISMISSED without prejudice.**

**III.    Compassionate release**

Even if Davison exhausted his administrative remedies, he has not shown that "extraordinary and compelling" reasons warrant a reduction in sentence as discussed *infra*. See 18 U.S.C. § 3582(c)(1)(A). Once a sentence is imposed, the "authority of a district court to modify an imprisonment sentence is narrowly limited by statute." United States v. Phillips, 597 F.3d 1190, 1194-95 (11th Cir. 2010); United States v. Shaw, 711 Fed. Appx. 552, 554-55 (11th Cir. 2017) (same).   Specifically, the "court may not modify a term of imprisonment once it has been imposed except" as set out in 18 U.S.C. § 3582(c). See United States v. Pubien, 805 Fed. Appx. 727, 730 (11th Cir. Feb. 25, 2020) (quoting 18 U.S.C. § 3582(c)).

The compassionate release provision of 18 U.S.C. § 3582(c)(1)(A)(i) provides that the Court "may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the [applicable] factors set forth in 18 U.S.C. § 3553(a)," if the Court finds that "extraordinary and compelling reasons warrant such a reduction" and the reduction is "consistent with applicable policy statements issued by the [United States] Sentencing Commission." 18 U.S.C. § 3582(c)(1)(A).

The applicable Policy Statement, U.S.S.G. § 1B1.13, has not been amended since the enactment of the First Step Act. Therefore, the Sentencing Commission has not set out the policy to

apply when inmates file the motion. Instead, the Policy Statement sets out the policy to apply "[u]pon motion of the Director of the Bureau of Prisons." Id.

However, in United States v. Granda, - - - Fed. Appx. - - -, 2021 WL 1246252, at *1 (11th Cir. Apr. 5, 2021), the Eleventh Circuit recently stated:

> We've not yet held in a published opinion whether § 1B1.13, which on its face applies only to motions for compassionate release filed by the BOP and has not been amended following the First Step Act, constrains district courts in considering compassionate release motions filed by prisoners themselves. However, we've held that the district court's consideration of the policy statements in § 1B1.13 was not an abuse of discretion.

Granda, 2021 WL 1246252, at *1 (citing United States v. Harris, - - - F. 3d - - -, 2021 WL 745262, *3 & n.2 (11th Cir. Mar. 2, 2021).

The Eleventh Circuit further states that:

> Section 3582(c)(1)(A) still requires any reduction to be consistent with the sentencing commission's applicable policy statements. The policy statements applicable to § 3582(c)(1)(A) are found in U.S.S.G. § 1B1.13 and provide that the court may reduce a term of imprisonment "if, after considering the factors set forth in 18 U.S.C. § 3553(a),[1] to the extent that they are applicable," it finds, in relevant part, that extraordinary and compelling reasons warrant the reduction. The court must determine that the defendant is not a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g), before it can determine whether extraordinary and compelling reasons exist. U.S.S.G. § 1B1.13; id., comment. (n.1). In determining whether an individual is a danger to others, the court can consider: (1) the offenses' nature and circumstances; (2) the weight of the evidence against the person; (3) the person's history and characteristics; (4) the nature and seriousness of the danger to any person of the community that would be posed by the person's release. 18 U.S.C. § 3142(g).

***

> Footnote 1. The § 3553(a) factors include: (1) the nature and circumstances of the offense and the history and characteristics of the defendant; (2) the need for the sentence imposed to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; (3) the need for the sentence

4

>imposed to afford adequate deterrence; (4) the need to protect the public; (5) the need to provide the defendant with educational or vocational training or medical care; (6) the kinds of sentences available; (7) the Sentencing Guidelines range; (8) the pertinent policy statements of the Sentencing Commission; (9) the need to avoid unwanted sentencing disparities; and (10) the need to provide restitution to victims. 18 U.S.C. § 3553(a).

United States v. Granda, 2021 WL 1246252, at *1 (underlining in original).

The Commentary to the Policy Statement includes four examples of extraordinary and compelling reasons to consider a reduction in sentence under § 3582(c)(1)(A): (A) Medical Conditions of the Defendant; (B) Age of the Defendant; (C) Family Circumstances; and (D) Other Reasons. U.S.S.G. § 1B1.13 cmt. n.1.[2]

Specifically, Application Note 1(A) provides that a defendant's physical or mental condition may qualify if certain criteria are met. Specifically, if:

> **(i)** the defendant is suffering from a terminal illness (i.e., a serious and advanced illness with an end of life trajectory). a specific prognosis of life expectancy (i.e., a probability of death within a specific time period) is not required. examples include metastatic solid-tumor cancer, amyotrophic lateral sclerosis (als), end-stage organ disease, and advanced dementia.
>
> **(ii)** the defendant is—
>
>> (I) suffering from a serious physical or mental condition
>>
>> (II) suffering from a serious functional or cognitive impairment, or
>>
>> (III) experiencing deteriorating physical or mental health because of the aging process

---

[2] Subparagraph (B) requires the defendant be at least 65 years old. As noted *supra*, Davison is 22 years old, so this subparagraph does not apply to him. He also does not allege that his family circumstances meet the criteria in Application Note 1(C).

>that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover

U.S.S.G. § 1B1.13 cmt. n.1(A). Here, Davison does not allege he suffers from a terminal illness, a serious functional or cognitive impairment, or that he is experiencing deteriorating health as a result of the aging process. See generally U.S.S.G. § 1B1.13 cmt. n.1(A). Davison's motion, and letters in support, center around his desire to undergo a colostomy reversal. (Docs. 42, 43, 45, 46). To qualify as an extraordinary and compelling reason then, Davison must show he is "suffering from a serious physical or medical condition" "that substantially diminishes [his] ability to provide self-care within the environment of a correctional facility and from which he…is not expected to recover." U.S.S.G. § 1B1.13 cmt. n.1(A).

Alternatively, Davison could show he falls within Application note 1(D) "Other Reasons." U.S.S.G. § 1B1.13 cmt. n.1(D). Under Application Note 1(D), the district court may consider "Other Reasons" if "[a]s determined by the Director of the Bureau of Prisons, there exists in the defendant's case an extraordinary and compelling reason other than, or in combination with, the reasons described in subdivisions (A) through (C)." Id., cmt. n. (1)(D).

Davison states he "was shot in the abdominal by a close friend over a disagreement that resulted in me having to wear a colostomy bag." (Doc. 43 at 1). His "scheduled reversal surgery was November 25, 2019" but Davison missed the surgery because he was arrested November 24, 2019. (Id.). He states that he has been "waiting on the U.S. [Marshals] to approve [his] reversal surgery" since he was arrested. (Id.). And see (Doc. 42 at 1 (same)). His "request involves the delays of [his] colostomy reversal surgery." (Doc. 42 at 2). And, while he acknowledges the impact the "coronavirus madness" has had on his ability to see doctors and have his colostomy surgery, Davison contends he has "a serious physical/medical condition that needs surgery in order to fully recover." (Id. at 1).

6

Davison also mentions "catching an ulcer bacteria infection in the stomach" which required antibiotics but that "even after the infection" he has not been to the doctor. (Doc. 42 at 1). So, it does not seem Davison is still suffering from this infection. Then, Davison states that when changing out his colotomy bag, he "noticed that my stoma was very red. When I got some tissue to check on the stoma, it turned out that the stoma was bleeding." (Doc. 45 at 1). Davison informed the shift officer who related Davison's concerns to the nurse. (Id.). Davison states that "[o]n several occasions of me changing out my colostomy bag I've noticed that it'll bleed." (Id.).[3]

Davison does not allege that the colostomy bag substantially diminishes his ability to provide self-care in prison; nor does he allege that the delays in undergoing colostomy reversal surgery substantially diminish his ability to provide self-care in prison. See U.S.S.G. § 1B1.13 cmt. n.1(A). Moreover, chronic conditions that can be managed in prison are not a sufficient basis for compassionate release. See United States v. Mitchell, 2020 WL 5521369, at *2 (M.D. Ala. Sept. 14, 2020) (finding compassionate release was not warranted in part because "the evidence reflects that her medical conditions are being monitored and treated by healthcare professionals").

## IV.  Conclusion

For the reasons stated herein, Davison's Motion for Compassionate Release pursuant to 18 U.S.C. § 3582(c)(1)(A)(i) (Doc. 42) is **DISMISSED without prejudice.**

**DONE** and **ORDERED** this **27th** day of **April 2021.**

> s / Kristi K. DuBose
> KRISTI K. DuBOSE
> CHIEF UNITED STATES DISTRICT JUDGE

---

[3] **The Court has, through the U.S. Marshal, contacted the BOP regarding Davison's concerns about his colostomy reversal. The BOP has informed the Court that it is their intent to schedule the surgery before August 2021.**